COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Humphreys and AtLee
Argued by videoconference

MOUSSA MOISE HABA

v.      Record No. 0256-20-4

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
JUNE 15, 2021

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

Rachel C. Collins, Assistant Public Defender, for appellant.

Maureen E. Mshar, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Moussa Moise Haba appeals his conviction for the unlawful creation of an image of

another in violation of Code § 18.2-386.1. He contends that the evidence is insufficient to

support his conviction because the Commonwealth did not prove that the victim had a reasonable

expectation of privacy when he recorded her. For the reasons that follow, we conclude that the

evidence was sufficient to support the conviction. Consequently, we affirm.

## I. BACKGROUND[1]

The appellant's conviction arose from his interaction with the victim, who was a student

from Saudi Arabia studying at an area university. In July 2017, the appellant and the victim met

online. At first, the appellant and the victim exchanged messages over the internet, but their

relationship ultimately progressed to meeting in person.

---

[1] In accordance with familiar principles of appellate review, the facts are recited in the
light most favorable to the Commonwealth, as the prevailing party at trial. Lambert v.
Commonwealth, 298 Va. 510, 515 (2020).

During their short relationship, the appellant became controlling toward the victim. He told her that when he said that he loved her, she had to respond in kind. The appellant claimed to have "videos" of the victim, and he threatened to reveal them "to the Saudi authorities." He refused to show the victim the purported videos or even tell her what type of videos he claimed to possess. She worried that these recordings might provide evidence that she had a relationship with a man. She explained that Saudi Arabian culture prohibited women from having boyfriends. According to the victim, violating this societal norm could cause her, at the very least, to lose her scholarship or, worse, be "bur[ied] . . . alive." She clarified that she was not exaggerating and was stating "reality."

On August 6, 2017, the instant offense occurred when the appellant and the victim were in her apartment. During that encounter, the appellant used his smartphone to videorecord the victim for four minutes while they were in her bedroom.[2] In the video, the victim held a blanket in front of her naked body. She did not consent to the recording and pleaded with the appellant to stop recording her. According to the victim, she considered walking out of her apartment to avoid being recorded but did not, in part, because she was naked except for the blanket. The appellant threatened to hit her and repeatedly ordered her to "obey" him and drop the blanket. Despite his persistent commands, the victim refused to comply. Eventually, the appellant pulled the blanket away, exposing the victim's nude body and capturing it on the recording as she tried to cover herself with her hands and arms.

Once the appellant stopped recording, the victim suggested they go to a restaurant, thinking it would give her a chance to contact the police. While at the restaurant, the victim went to the women's restroom. From the restroom, she called the police.

_____

[2] The video was admitted into evidence at trial. The victim testified that her apartment was a studio, a single small room that functioned as both her living room *and bedroom*. The video reflects that the room contained both a bed and a couch.

Officer Charles Young of the Arlington County Police Department responded to the request for assistance. Young found the victim cowering in the restroom. The officer recovered the appellant's mobile telephone, which contained the video of the victim.

A grand jury indicted the appellant for abduction and unlawful creation of an image. At trial, the appellant made a motion to strike the charges, arguing that the evidence did not prove either offense. Regarding the instant offense, he argued that the evidence did not prove that the victim had a reasonable expectation of privacy because they were in a relationship, in a private space, and he did not record her "secretly." The trial court paraphrased the argument as "suggesting [that] somebody who is naked in their home with their boyfriend has no expectation of privacy that" he or she "will not be filmed." The appellant contended that the expectation of privacy was more general because it was a separate element of the crime from consent or recording. The court denied the motion.

The appellant testified in his defense. He stated that he made the video following an argument between him and the victim. According to the appellant, before he started recording, the victim agreed to let him make a video of her nude. He said that he did not stop when she told him to do so because she had already consented.

At the close of the evidence, the appellant renewed the motion to strike. The trial court again denied the motion.

The jury found the appellant not guilty of abduction but guilty of the unlawful creation of an image of another. The trial court imposed the jury's sentence of ten months and fifteen days.

## II. ANALYSIS

The appellant argues that the evidence is insufficient to support his conviction. He specifically suggests that the Commonwealth did not prove that the victim had a reasonable

expectation of privacy when he videoed her. This is the only element of the offense that he contests on appeal.

In determining whether the evidence was sufficient to support a criminal conviction, the appellate court views the facts in the light most favorable to the Commonwealth. See, e.g., Lambert v. Commonwealth, 298 Va. 510, 515 (2020). This deferential standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. Vasquez v. Commonwealth, 291 Va. 232, 236 (2016) (quoting Bowman v. Commonwealth, 290 Va. 492, 494 (2015)). This standard "applies not only to the historical facts themselves[] but [also to] the inferences from those facts." Clanton v. Commonwealth, 53 Va. App. 561, 566 (2009) (*en banc*) (quoting Crowder v. Commonwealth, 41 Va. App. 658, 663 n.2 (2003)).

In reviewing the sufficiency of the evidence, the Court defers to the jury's findings of fact unless they are plainly wrong or without evidence to support them. See Secret v. Commonwealth, 296 Va. 204, 228 (2018). In its role of judging witness credibility, the fact finder is "entitled to disbelieve" a defendant's testimony. See Tarpley v. Commonwealth, 261 Va. 251, 256 (2001). Further, "this Court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Pooler v. Commonwealth, 71 Va. App. 214, 220 (2019) (quoting Hamilton v. Commonwealth, 69 Va. App. 176, 195 (2018)). Instead, the test is "whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Id. (quoting Hamilton, 69 Va. App. at 195).

To the extent that the sufficiency issue on appeal requires the appellate court to determine the meaning of a statute and its terms, as applicable in this case, the court reviews that issue *de novo.* See Barson v. Commonwealth, 284 Va. 67, 71-72 (2012); Miller v. Commonwealth, 64

Va. App. 527, 537 (2015). Although criminal statutes are to be strictly construed against the Commonwealth, we must also "give reasonable effect to the words used" in the legislation. Johnson v. Commonwealth, 37 Va. App. 634, 639 (2002) (quoting Dillard v. Commonwealth, 28 Va. App. 340, 344 (1998)). When interpreting a statute, an appellate court "presume[s] that the General Assembly chose, with care, the words that appear in [that] statute." Jones v. Commonwealth, 296 Va. 412, 415 (2018) (quoting Johnson v. Commonwealth, 292 Va. 738, 742 (2016)). Consequently, if the language is "plain and unambiguous, we are bound by [its] plain meaning." Tisdale v. Commonwealth, 65 Va. App. 478, 484 (2015) (quoting Lee Cnty. v. Town of St. Charles, 264 Va. 344, 348 (2002)); see Jones, 296 Va. at 415 (quoting Alston v. Commonwealth, 274 Va. 759, 769 (2007)).

The appellant was convicted of unlawful creation of an image under Code § 18.2-386.1. The applicable subsection of the statute forbids a person from "knowingly and intentionally creat[ing] any videographic or still image" of a person without consent if:

> (i) that person is totally nude, clad in undergarments, or in a state of undress so as to expose the genitals, pubic area, buttocks or female breast in a restroom, dressing room, locker room, hotel room, motel room, tanning bed, tanning booth, bedroom or other location; or (ii) the videographic or still image is created by placing the lens or image-gathering component of the recording device in a position directly beneath or between a person's legs for the purpose of capturing an image of the person's intimate parts or undergarments covering those intimate parts when the intimate parts or undergarments would not otherwise be visible to the general public; and when the circumstances set forth in clause (i) or (ii) are otherwise such that the person being recorded would have a reasonable expectation of privacy.

Code § 18.2-386.1(A).

The appellant was convicted under clause (i). As set forth clearly in the statute, the elements of that offense relevant to our analysis here are: that the victim did not consent, was in a location such as a "restroom, dressing room, locker room, . . . bedroom or other location," and

- 5 -

the circumstances were "otherwise such" that the victim "would have a reasonable expectation of privacy." See id. See generally Tisdale, 65 Va. App. at 484 (adhering to the plain meaning of statutory language).

The sufficiency issue raised requires interpretation of the statutory phrase "reasonable expectation of privacy" as it applies to clause (i). "When a 'statute's terms are undefined' by the legislature, the Court gives those terms 'their "ordinary meaning," in light of "the context in which [they are] used."'" Green v. Commonwealth, 72 Va. App. 193, 203 (2020) (quoting Va. Marine Res. Comm'n v. Chincoteague Inn, 287 Va. 371, 384 (2014) (alteration in original)).

This Court previously examined the meaning of the phrase "reasonable expectation of privacy" as used in Code § 18.2-386.1(A)(ii) in Wilson v. Commonwealth, 53 Va. App. 599, 602-05 (2009).[3] We held that the phrase "reasonable expectation of privacy" applied to both clauses (i) and (ii). Id. at 605. The Court explained that "[c]lause (i) addresses the proscribed acts in relation to *the location* of the victim[,] i.e., 'a restroom, . . . bedroom or other location." Id. at 604 (emphasis added) (analyzing both clauses even though the case directly involved only (ii)). It described the locations specified in the statute as areas "not customarily visible to the general public while in use—even though some of these locations may be accessible to the general public." Id. (citing Code § 18.2-386.1(A)(i)). The Court reasoned that under clause (i), the victim's reasonable expectation of privacy is "in reference to the victim's actual physical location" at the time of the recording.[4] See id. at 605.

---

[3] The legislature amended Code § 18.2-386.1 subsequent to Wilson, but those changes are not relevant to the analysis here. See 2014 Va. Acts ch. 399.

[4] In contrast, a victim's reasonable expectation of privacy under the second clause references his or her "intimate parts or undergarments covering those intimate parts," rather than the victim's physical location. Wilson, 53 Va. App. at 605.

In considering whether a reasonable expectation of privacy existed as an element of the offense, the fact finder "tells us what [the] set of facts is," and its "determination of those underlying facts is subject to [a] deferential . . . standard of review." See United States v. Ferebee, 957 F.3d 406, 416 (4th Cir. 2020) (applying this standard in the Fourth Amendment context); see Logan v. Commonwealth, 47 Va. App. 168, 171 (2005) (*en banc*) ("Though the ultimate question whether a reasonable expectation of privacy exists [under the Fourth Amendment] . . . involves an issue of law, we address that question only after the relevant historical facts have been established."); cf. Caison v. Commonwealth, 52 Va. App. 423, 440-41 (2008) (analyzing the reasonableness of force used for a self-defense claim as a factual issue). Accordingly, whether a reasonable expectation of privacy exists turns on the specific circumstances of each case. See generally, e.g., Salahuddin v. Commonwealth, 67 Va. App. 190, 205 (2017) (analyzing the reasonable expectation of privacy concept in the Fourth Amendment context). Additionally, in the context of the crime, the reasonable expectation of privacy must exist at the time of the gravamen of the offense, when the image was created. See generally McGinnis v. Commonwealth, 296 Va. 489, 507 (2018) (holding that the requisite intent must exist at the time that the defendant commits the "gravamen of the offense"); Groffel v. Commonwealth, 70 Va. App. 681, 689 (2019) (noting that the gravamen of an offense is its essence), aff'd, 299 Va. 271 (2020), petition for cert. filed, No. 20-6867 (U.S. Apr. 27, 2021); Commonwealth v. Holloway, 9 Va. App. 11, 18 (1989) (explaining that for Fourth Amendment protection, a reasonable expectation of privacy must exist at the time of the search).

Here, the victim was in her bedroom, a location expressly included in the statute. She knew the appellant, and, based on their unique relationship, she undressed in front of him. At the time the recording began, however, the victim was shielding her naked body from him and the

camera with a blanket.[5] She pleaded with the appellant to stop recording her. When the appellant refused to stop and continued his demands to remove the blanket, she even considered walking out of the apartment but did not do so, in part, because she was naked.[6] Under these circumstances, the jury was entitled to find that the victim had a reasonable expectation of privacy in her bedroom at the time that the appellant was recording her. Cf. United States v. Dunn, 480 U.S. 294, 300 (1987) (recognizing for Fourth Amendment purposes the "sanctity" of a person's "home and the privacies of life" (quoting Oliver v. United States, 466 U.S. 170, 180 (1984))); Stanley v. Georgia, 394 U.S. 557, 564 (1969) (recognizing "the privacy of a person's own home").

The appellant argues that any expectation of privacy the victim had in her bedroom was unreasonable because she did not "take measures to keep" her naked body "reasonably private" and because she knew that the appellant was there when she originally undressed. However, when the appellant started recording, the victim was holding a blanket to shield her body from view. Consequently, she did take measures to hide her body and keep it "reasonably private." The analysis of whether the victim had a reasonable expectation of privacy focuses on the

[5] The appellant argues that as a matter of law this fact is irrelevant to the reasonable expectation of privacy analysis because the victim was not entirely successful in covering the private areas of her body during the recording. Contrary to the appellant's suggestion, the jury was entitled to consider this fact, along with the other surrounding circumstances, in determining whether the evidence proved a reasonable expectation of privacy at the time of the recording.

[6] The appellant suggests that one cannot consider evidence relating to the elements of location and non-consent also as evidence of whether the victim had a reasonable expectation of privacy. He argues that doing so would impermissibly conflate the elements. However, these factors are among the circumstances relevant to the determination of a reasonable expectation of privacy and may be considered as such. See generally Martin v. Commonwealth, 272 Va. 31, 35-36 (2006) (providing an example of an offense that contains elements that overlap factually). Further, in evaluating the sufficiency of the evidence, whether the evidence proves an element of an offense is a factual issue, and a tribunal does not view each fact in isolation. See Commonwealth v. Moseley, 293 Va. 455, 466 (2017) (holding that it is "improper[]" to "scrutinize[] each piece of evidence in isolation").

circumstances that existed when the appellant made the recording in the particular location, not the events that transpired beforehand.[7]  See generally McGinnis, 296 Va. at 507 (holding that the requisite intent must exist at the time that the defendant committed the gravamen of the offense).

Regarding the appellant's argument that his very presence negated the reasonableness of the victim's expectation of privacy in her bedroom, the known presence of another person does not automatically negate a reasonable expectation of privacy.  See generally Hamberger v. Eastman, 206 A.2d 239, 242 (N.H. 1964) (holding that placing a listening device in the plaintiffs' marital bedroom violated their right to privacy); Glenn v. Commonwealth, 275 Va. 123, 133 (2008) (discussing generally the privacy interests of multiple occupants of a residence). Therefore, we reject the proposition that under the statute, the victim cannot have a reasonable expectation of privacy if she knows another person is present at the time of the offense.

Supporting this interpretation is the statute's inclusion of locker rooms in the list of protected locations.  Under the appellant's suggested definition of reasonable expectation of privacy, the statute would prohibit recording another person in a locker room only if the victim reasonably believed no one could see her undressed.  This interpretation runs contrary to the common experience of locker rooms.  See generally Ohin v. Commonwealth, 47 Va. App. 194, 198-99 (2005) (considering "[c]ommon experience" when interpreting a statutory phrase (quoting Delcid v. Commonwealth, 32 Va. App. 14, 18 (2000))).  A locker room generally consists of a shared space for changing clothes before and after physical activity.  The statute's specific inclusion of locker rooms as a location where the offense can occur indicates that the legislature envisioned the statute applying in a situation when another person is present and within view.  Therefore, we reject the appellant's proposed interpretation of the phrase

---

[7] While the jury considers all the evidence and decides the weight of each piece, the critical consideration is whether the evidence proved that the victim had a reasonable expectation of privacy at the time of the offense.

"reasonable expectation of privacy" as used in Code § 18.2-386.1. See Spratley v. Commonwealth, 298 Va. 187, 195-96 (2019) ("We adhere to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd." (quoting Owens v. DRS Auto. FantomWorks, Inc., 288 Va. 489, 497 (2014))).

The appellant additionally relies on Barnes v. Commonwealth, 61 Va. App. 495 (2013), in support of his position that the obvious presence of another person negated the victim's reasonable expectation of privacy. He suggests that "[r]easonable expectation of privacy in this context is . . . akin to the standard applied in indecent exposure cases" such as Barnes. In that case, the defendant appealed his convictions for indecent exposure and sexual display. Id. at 496. He was convicted for masturbating in his jail cell in view of staff, inmates, and others. Id. at 496-97, 500. Affirming the convictions, the Court held that the term "public place," as used in those statutes, "comprises places and circumstances where the offender does not have a reasonable expectation of privacy, because of the foreseeability of a non-consenting public witness." Id. at 500. The Court based this definition in part on the applicable statutes' purpose of "protect[ing] individuals from witnessing the offensive conduct." Id. The appellant argues that the victim here, like the appellant in Barnes, "had no reasonable expectation of privacy when" she was "in 'open view'" to him.[8] Contrary to this argument, the definition of the term "public place" in Barnes does not apply to the analysis here. The victim in this case, while

---

[8] The appellant's argument posits that a "public place" for purposes of indecent exposure is necessarily the opposite of a place in which an individual has a "reasonable expectation of privacy" for purposes of the unlawful creation of an image. Undermining the appellant's position is the fact that the statutes have different purposes. The purpose of the statute at issue in Barnes is to "protect individuals from witnessing the offensive conduct." Barnes, 61 Va. App. at 500. The purpose of Code § 18.2-386.1 is to protect individuals from having private areas of their bodies videorecorded or photographed without consent. See Code § 18.2-386.1. See generally Jones, 296 Va. at 415 (explaining that to determine legislative intent, courts should look to the plain language of a statute). Therefore, Barnes does not aid our analysis.

- 10 -

undressed in her bedroom, did not risk exposing herself to "a non-consenting public witness." See id.

The appellant also contends that Code § 18.2-386.1 "was not designed for people in a relationship in their private homes" or for non-secretive recordings. He cites Wilson for support. Although Wilson affirmed a conviction for taking a surreptitious photograph of a stranger in a public place, the case involved a different clause of the statute that proscribes conduct that is not at issue here. Wilson, 53 Va. App. at 602, 605-06. It does not limit application of the statute to those circumstances.[9] Id. As the law makes clear, had the legislature intended to exclude a blanket category of conduct from the offense, such as recordings between people in a relationship or non-surreptitious recordings, it would have done so. See Sarafin v. Commonwealth, 288 Va. 320, 328 (2014) (holding that the use of specific statutory language in one instance but not in a similar instance signifies a conscious choice on the part of the legislature); Phelps v. Commonwealth, 275 Va. 139, 142 (2008) (concluding that if the General Assembly had intended to make the statute at issue narrower, it would have done so); cf. Code § 18.2-130 (prohibiting "secretively or furtively peep[ing]"); Code § 18.2-386.1(B) (excluding recordings made during criminal investigations by law enforcement). The *absence* of language in Code § 18.2-386.1 limiting the prohibited conduct to people not in a relationship or surreptitious recordings signifies that the legislature did not intend to provide such limits.

Finally, the appellant suggests that the statutory requirement that the victim have a reasonable expectation of privacy denotes an expectation of privacy from viewing, not from recording. Although the conviction is not for unlawfully *seeing* the victim but instead for unlawfully *creating a videographic image* of her, the facts in this case do not require the Court to

---

[9] Although the General Assembly intended in part to "address circumstances involving surreptitious photographs and videotapings," Blackwell v. Commonwealth, 73 Va. App. 30, 48 (2021), it did not limit the statute to proscribing surreptitious recordings. See Code § 18.2-386.1.

make this distinction.[10]  See generally Commonwealth v. White, 293 Va. 411, 419 (2017) (recognizing the best and narrowest ground principle).  It is clear from the record that the victim did try to prevent the appellant from seeing her naked body at the time he was recording her.  The fact that she may have permitted him to see her naked before he started recording is irrelevant here.  She covered her body, clearly communicated her desire not to be videorecorded, and made a reasonable attempt to keep her naked body from view, asserting her expectation of privacy from him both viewing and recording her body at the time of the offense.

For these reasons, the evidence was sufficient to support the jury's finding that the appellant recorded the victim when she had a reasonable expectation of privacy under Code § 18.2-386.1.

### III.  CONCLUSION

Code § 18.2-386.1(A)(i) encompasses a person's act of videorecording another person, naked, without her consent, in her bedroom, when she had a reasonable expectation of privacy.  The evidence supports the jury's finding that the victim had a reasonable expectation of privacy.  Consequently, we affirm the conviction for the unlawful creation of an image.

Affirmed.

---

[10] The difference between viewing and recording is significant.  A recording, unlike a memory, is perfectly preserved and can be distributed.  Therefore, a person can allow someone to view her in a state of undress and still retain the reasonable expectation that the second person will not create a videographic image of her.